816 P.2d 251

**Michael Duane MULLET, Petitioner,**

v.

**The Honorable Leslie MILLER, a Judge for The Superior Court of the State of Arizona, County of Pima, Respondent,**

**and**

**The STATE of Arizona, Real Party in Interest.**

**No. 2 CA-SA 91-0019.**

Court of Appeals of Arizona, Division 2, Department B.

March 19, 1991.

Review Denied Sept. 24, 1991.

Susan A. Kettlewell, Pima County Public Defender, Tucson, for petitioner.

Grant Woods, Atty. Gen. by John R. Evans, Tucson, for real party in interest.

## OPINION

HOWARD, Presiding Judge.

Petitioner Michael Mullet (Mullet) seeks special action relief from the order of the respondent judge denying his motion to dismiss the underlying criminal charges on double jeopardy grounds in light of a prior proceeding before and an order entered by the Arizona Corporation Commission (the Commission). Because this is a matter of statewide importance and requires consideration of legal issues as opposed to controverted questions of fact, we accept jurisdiction. *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983). For the reasons stated below, we grant relief.

The relevant facts and procedural history are as follows. On January 24, 1990, the Commission conducted a hearing regarding allegations that Mullet and Intercontinental Foreign Exchange, Ltd., Mullet's corporation, had offered or sold unregistered securities in violation of A.R.S. §§ 44–1841 and 44–1842, and had violated the anti-fraud provisions of A.R.S. § 44–1991 by misrepresenting investors' profits, Mullet's compensation in the transactions, funds to be invested, and Mullet's prior felony conviction. Mullet was indicted by the Pima County Grand Jury on March 22, 1990, on one count of illegally conducting an enterprise from August 1987 to June 1989, and five counts of fraudulent schemes and artifices, all arising out of his use of investors' money to trade on the foreign currency futures market. On November 6, 1990, Mullet filed a motion to dismiss the criminal charges on double jeopardy grounds. The Commission issued a final order on November 29, 1990, directing Mullet to cease and desist from trading in the foreign currency futures market without complying with the proper licensing requirements, to pay restitution in excess of $400,-000 and to pay an administrative penalty of $380,000. The transcript of the Commis-

sion hearing is apparently being used by the real party in interest, the State of Arizona, in the criminal proceeding. The motion to dismiss was denied on December 17, 1990, and a subsequent motion for rehearing was denied on January 30, 1991. This special action followed.

The issue raised by this special action is whether the administrative proceeding before the Commission placed Mullet in jeopardy and whether the administrative penalty imposed by the Commission was a punishment, thus precluding the criminal prosecution based on the same conduct.[1]

The double jeopardy clause of the Fifth Amendment to the United States Constitution "protects against a second prosecution for the same offense after acquittal ... a second prosecution for the same offense after conviction ... [a]nd ... multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665 (1969). The meaning of the clause as it relates to successive prosecutions was further elucidated in *Grady v. Corbin,* 495 U.S. ——, ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564 (1990), where the Supreme Court held that:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted....

In *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court addressed the double punishment aspect of the clause. Specifically, the Court considered whether a civil proceeding brought by the United States in which a fine was imposed for the submission of false claims to an insurance company subjected the defendant, who had previously been convicted of various related criminal charges, to double jeopardy by punishing the defendant twice for the same conduct. Crucial to the Court's analysis

---

1. We note that the state does not dispute Mullet's assertion that the criminal prosecution is based on the same conduct that was the subject of the proceeding before the Commission.

**596**

was whether the civil sanction was, in actuality, punitive in nature. The Court noted that, "[s]imply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." 490 U.S. at 448, 109 S.Ct. at 1901–1902, 104 L.Ed.2d at 501. The holding was narrowly drawn, the Court stating in that regard, "[w]hat we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. The Court went on to say that "the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." 490 U.S. at 451, 109 S.Ct. at 1903, 104 L.Ed.2d at 504.

Based primarily on *Grady* and *Halper*, this court recently found that evidence of civil traffic offenses, in connection with which default judgments were entered against the defendant, could not be used against the defendant in a subsequent criminal prosecution on aggravated assault and criminal damage charges. *Taylor v. Sherrill*, 166 Ariz. 359, 802 P.2d 1058 (App. 1990). We concluded that "the sanctions that flow from violating the speeding and unsafe turning laws are clearly intended to deter the offender and other drivers from committing such infractions and to promote retribution." *Id.* at 364, 802 P.2d at 1062. We further noted that one's license may be suspended or revoked for excessive infractions. Thus, the sanctions for the civil traffic violations were found to be punitive in nature, as they were designed to serve the goals of punishment.

Relying on *Pearce*, *Grady*, and *Taylor*, Mullet argues that the proceeding before

the Commission placed him in jeopardy, particularly in light of the administrative penalty imposed which petitioner contends is punitive, rather than remedial, in nature.

■ In light of what we consider to be the unique nature of the Commission specifically, and administrative bodies generally, we do not believe jeopardy attached here under *Grady*, as we do not believe the proceeding may be considered a prosecution. The Commission was created by article XV, § 1 of the Arizona Constitution. The constitution grants the Commission various powers, including the power to inspect and investigate, Ariz. Const. art. XV, § 4, the power to issue certificates of incorporation and licenses, Ariz. Const. art. XV, § 5, and the power to impose fines. Ariz. Const. art. XV, § 19. It is the responsibility of the Commission to monitor, among other things, the sales of securities to ensure compliance with various statutes designed to protect the public. Our extension of the double jeopardy clause to civil traffic violations in *Taylor* was merely an acknowledgment that redesignating as "civil" that which was historically criminal does not render inapplicable the constitutional protection against double jeopardy.[2] This may not be said of proceedings before the Commission. We do not believe that it was the intent of the Supreme Court in *Grady* to extend the protection against double jeopardy to nonjudicial proceedings by an administrative body charged with regulating business. *See Serfass v. United States*, 420 U.S. 377, 392, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265, 275 (1975) ("jeopardy does not attach until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.' [Citation omitted]").

Even where the administrative proceeding has resulted in the loss of liberty, courts have recognized the distinction between administrative and criminal proceedings, rejecting double jeopardy arguments. In *United States v. Rising*, 867 F.2d 1255 (10th Cir.1989), for example, the Tenth Cir-

---

**2.** We note, as we did in *Taylor*, that in *Grady*, one's of the prosecutions, unlawful lane change, was also a civil violation.

cuit court of appeals rejected the defendant's argument that prosecuting him for the murder of a fellow inmate was barred by double jeopardy because of a prior administrative hearing which was followed by punishment for that murder. *See also Larkin v. State of Florida*, 558 So.2d 486 (Fla.App.1990) (double jeopardy does not apply to a judicial proceeding following an administrative proceeding and, therefore, did not bar criminal prosecution for crime of attempted escape); *Epps v. Board of Probation and Parole*, 129 Pa.Cmwlth. 240, 565 A.2d 214 (1989) (double jeopardy clause is inapplicable to administrative proceedings which were not, therefore, barred because of prior guilty plea for same conduct); *Alex v. State of Alaska*, 484 P.2d 677 (Alaska 1971) (administrative proceeding resulting in inmate's loss of good time credits because of his escape did not bar, on double jeopardy grounds, subsequent prosecution for the crime of escape).

In *Railroad Commission of Texas v. F.E.R.C.*, 874 F.2d 1338 (10th Cir.1989), in a different context, the court rejected a well operator's appeal from the order of the Federal Energy Regulatory Commission which affirmed an administrative law judge's determination that the operator had violated the Natural Gas Policy Act, based on the argument that a second stage of an administrative investigation constituted double jeopardy. Pointing to the "fundamental differences" between administrative and criminal proceedings, the court, quoting a decision from the Second Circuit court of appeals, noted as follows:

> Every person doing business and every investor knows that government agencies conduct investigations for a variety of reasons and most of them feel the duty to respond to a proper inquiry. As for those whose practices are investigated, it is a necessary hazard of doing business to be the subject of inquiry by a government regulatory agency. *SEC v.*

*Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir.1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974).

874 F.2d at 1344.

In engaging in the business of selling securities, Mullet brought himself within the purview of the Commission's regulatory and investigative powers. That the Commission investigated him, found him to have violated various state statutes and ordered him to pay restitution, as well as constitutionally and statutorily sanctioned fines, was a "hazard of doing business" that Mullet assumed. It was not a prosecution for purposes of the double jeopardy clause.[3]

■ The fact that proceedings before the Commission are administrative and, therefore, not prosecutions under *Grady* does not end the double jeopardy inquiry. Under *Halper*, if the administrative penalty of $380,000 is purely punitive as opposed to remedial, the fact that it was imposed in an administrative proceeding, as opposed to a civil or criminal proceeding, does not change its nature. A cow, after all, does not become a horse simply by calling it a horse. As in *Halper*, we are unable to determine from the record before us, which does not contain an accounting of the state's damages, whether the administrative penalty is rationally related to making the state whole in connection with the proceedings before the Commission. As the Court in *Halper* stated, "[w]e must leave to the trial court the discretion to determine on the basis of such an accounting, the size of the ... sanction the Government may receive without crossing the line between remedy and punishment." 490 U.S. at 450, 109 S.Ct. at 1902, 104 L.Ed.2d at 502–503. We therefore remand this matter to the trial court for such a determination. In the event that the administrative penalty

---

**3.** It is irrelevant whether A.R.S. § 44–2036(C), as amended in 1990, is applicable to the Commission's order. This provision merely provides an easier method of enforcement of an order of the Commission by allowing the filing of the order with the clerk of the superior court and directing that such order be treated as a judgment of the superior court. Assuming such provision to be applicable, it does not change our conclusion that the proceeding is administrative. Nor is the proceeding one that was traditionally criminal in nature, such as we found in *Taylor* with regard to the civil traffic violations.

is determined to be a punishment, the underlying criminal proceeding must be dismissed, to the extent that the charges are based on the same conduct that was the basis of the proceeding before the Commission. We reject the state's argument that in the event the administrative penalty is found to be punishment, to avoid double punishment in the criminal proceeding no fine may be imposed but the dismissal of the charges is not required. While multiple punishments may be imposed in a single proceeding for the same conduct if authorized by statute, the double jeopardy clause clearly prohibits a second proceeding to punish for the same conduct. *See Halper,* 490 U.S. at 450–52, 109 S.Ct. at 1903, 104 L.Ed.2d at 503 (1989); *see also Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

We grant special action relief and remand this matter for further proceedings consistent with this opinion.

FERNANDEZ, C.J., and CARRUTH, J.,* concur.