870 P.2d 413

**STATE of Arizona, Appellant,**

v.

**Wade Bruce COOK, Appellee.**

**No. 1 CA-CR 91-0760.**

Court of Appeals of Arizona, Division 1, Department A.

June 10, 1993.

Review Denied April 5, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Div., and Warren J. Granville, Asst. Atty. Gen., Phoenix, for appellant.

Lewis and Roca by Edward F. Novak, Janet Napolitano and Charles W. Steese, Phoenix, for appellee.

**OPINION**

KLEINSCHMIDT, Judge.

The state appeals from an order dismissing an indictment charging the defendant, Wade Bruce Cook, with violations of the Arizona securities laws. We conclude that the trial court was correct in finding that the imposition of a $150,000 penalty in a prior administrative proceeding constituted punishment within the meaning of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, thus barring the state from prosecuting Cook criminally.

In February of 1989, the Securities Division of the Arizona Corporation Commission accused Cook of selling unregistered securities, selling securities without a license, and securities fraud, violations of Ariz.Rev.Stat.

Ann. ("A.R.S.") sections 44–1841, 44–1842 and 44–1991, respectively. Following a hearing, the commission found that Cook had committed these violations and ordered him to cease and desist from the sale of securities in Arizona, make restitution in the amount of $390,841 to a number of investors, and pay a $150,000 administrative penalty.

Subsequently, Cook was indicted for the same conduct which was the subject of the proceedings before the corporation commission. He moved to dismiss the indictment on the ground that the $150,000 penalty previously imposed was punishment which, under the Double Jeopardy Clause, precluded the state from seeking further criminal sanctions. Following an evidentiary hearing, the trial court, relying on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Mullet v. Miller*, 168 Ariz. 594, 816 P.2d 251 (App.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992), concluded that criminal prosecution violated the Double Jeopardy Clause. The court found that the administrative penalty was "punitive," not "remedial," as those terms are used in *Halper* and it dismissed the indictment with prejudice. The state challenges that dismissal.

## A CIVIL SANCTION CAN BE "PUNISHMENT" FOR DOUBLE JEOPARDY PURPOSES

In *United States v. Halper*, the Supreme Court reaffirmed that multiple punishments for the same offense imposed in different proceedings violate the Double Jeopardy Clause. 490 U.S. at 435, 109 S.Ct. at 1892. Halper had been prosecuted criminally for submitting sixty-five fraudulent Medicare billings that totalled $585. He was convicted, imprisoned and fined $5,000. Subsequently, the government brought an action against him under the federal civil False Claims Act. The district court granted summary judgment for the government on the issue of liability but refused to impose the statutory penalty of $130,000. The court ruled that imposing such a penalty would violate the Double Jeopardy Clause by punishing Halper a second time for the same conduct. The Supreme Court agreed, stating:

> We ... hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

490 U.S. at 448–49, 109 S.Ct. at 1902. The term "remedial," as the court used it in *Halper*, refers to a sanction that is intended to recompense the government for the loss the defendant caused. The court explained:

> The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting for the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.* at 449–50, 109 S.Ct. at 1902.

*Halper* has been construed by the appellate courts of this state in several decisions which the parties have cited as bearing on the issue before us. In *Mullet v. Miller*, Division Two of this court remanded a criminal prosecution to the trial court to determine whether an administrative penalty of $380,000 imposed by the corporation commission for a violation of the securities laws, "was rationally related to making the state whole." 168 Ariz. at 597, 826 P.2d at 254. The court of appeals directed the trial court to dismiss the prosecution if it found that the penalty was not related to making the state whole. *Id.* at 597–98, 826 P.2d at 254–55.

In *Taylor v. Sherrill*, 169 Ariz. 335, 819 P.2d 921 (1991), the supreme court considered a claim that a default judgment for civil traffic violations precluded a criminal prosecution for assault and criminal damage that arose out of the same incident. The court concluded that the defendant had the burden of demonstrating that a previous civil sanction constituted "punishment." *Id.* at 344, 819 P.2d at 930. It found that the defendant

had failed to carry his burden on this issue because the maximum civil penalty that could be imposed for each offense was $250, and the record did not disclose what penalties had actually been imposed or whether the defendant had paid them. The court also resolved an issue implicit in the case now before us; for purposes of double jeopardy analysis, it makes no difference that the criminal action follows, rather than precedes, the civil proceeding. *Id.* at 343, 819 P.2d at 929.

The statute authorizing administrative penalties gives little guidance as to whether such penalties are intended to be punitive or remedial. At the time of the proceeding in question it read:

A. A person who, in an administrative action, is found to have violated any provision of this chapter or any rule or order of the commission may be assessed an administrative penalty by the commission, after a hearing, in an amount not to exceed five thousand dollars for each violation.

B. In the event of noncompliance with commission orders, the attorney general may bring actions to recover penalties pursuant to this section in the name of this state in the superior court of Maricopa County. Nothing in this section shall be construed to limit the right of a party in an action under this section to a trial by jury.

C. Any penalties collected pursuant to this section shall be remitted to the state treasurer for deposit in the state general fund.

A.R.S. § 44–2036.

We find no merit in the state's attempt to classify the administrative penalty as non-punitive by invoking the general "remedial" purpose behind the securities laws. *See United States v. Naftalin,* 606 F.2d 809 (8th Cir.1979). The state's argument that the commission's "purpose" is "to safeguard the investing public from fraudulent devices" is irrelevant to the double jeopardy question before us because that purpose may be fulfilled by a "punitive" sanction as well as by a "remedial" one.

## THE STANDARD OF REVIEW

■ We first consider the appropriate standard of review. Many constitutional questions, even mixed questions of law and fact, are reviewed de novo. An exhaustive analysis of the subject in general is found in *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We agree, however, with Cook's contention that the issue presented by this case is properly reviewed for an abuse of discretion. In *Halper,* the Supreme Court noted:

We must leave to the trial court the discretion to determine on the basis of [an accounting of the Government's damages] the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.

490 U.S. at 450, 109 S.Ct. at 1902; *accord Mullet,* 168 Ariz. at 597, 816 P.2d at 254.

A deferential standard of review is suggested by the fact-sensitive inquiry the trial court is called upon to make in resolving this type of double jeopardy claim. In *Halper,* the Supreme Court rejected the government's contention that determining the nature of the civil sanction imposed was truly a matter of statutory construction. 490 U.S. at 447, 109 S.Ct. at 1901. The Court said:

[W]hile recourse to statutory language, structure, and intent is appropriate in identifying the inherent nature of a proceeding, or in determining the constitutional safeguards that must accompany those proceedings as a general matter, the approach is not well suited to the context of the "humane interests" safeguarded by the Double Jeopardy Clause's proscription of multiple punishments.... This constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.

*Id.* (citations and footnote omitted).

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

■ The court found that the state incurred costs of $1,492 and attorney's fees of

$30,000 in the administrative proceeding. The $150,000 penalty far exceeds these sums, easily supporting the conclusion that the purpose of the sanction was not solely remedial. *See Halper,* 490 U.S. at 452, 109 S.Ct. at 1904 (disparity between government costs of $16,-000 and penalty of $130,000 is "sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy").

The trial court scrutinized the commission's order for sanctions, noting the language which explained: "taking into consideration the fact that Mr. Cook appropriated investors' funds for personal purposes, the Commission agrees with the [securities] Division that Respondents should be assessed an administrative penalty of $150,000." This statement, which focused on Cook's conduct rather than on the loss to the state, is objective evidence of a punitive intent. *See Kvitka v. Board of Registration in Medicine,* 407 Mass. 140, 551 N.E.2d 915, 918, *cert. denied,* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 47 (1990) (administrative fine imposed after physician's guilty plea was punishment, court noting that licensing board characterized defendant's actions as "'a flagrant abuse of public trust'" and stated that "'misconduct in the area of prescription practice will not be treated lightly'").

The trial court also relied on the testimony of Jim D. Nielsen, an attorney for the securities division, given at the hearing on the motion to dismiss. Nielsen, who prosecuted the action before the corporation commission, stated that the fine proposed by the division and adopted by the commission had no remedial purpose, but was intended to deter Cook and others from committing similar acts.

The state argues that Nielsen's intent was immaterial and that the commission's purpose must be discerned from its own order. We do not believe the evidence need be viewed that narrowly. Certainly, what Nielsen testified to had a bearing on whether the state was even attempting to recoup damages and costs through the imposition of the penalty.

The state also argues that the trial court erred by narrowly viewing the state's loss as the cost of maintaining the administrative

proceeding against Cook. Rather, the state asserts that the combined effect of Cook's conduct injured the state's economy and lowered the state's tax base. Such intangible costs, it argues, are difficult to quantify but may nonetheless be recovered as a remedy. *See, e.g., United States v. Walker,* 940 F.2d 442, 444 (9th Cir.1991) (customs penalty not punishment because it was justified by the financial burden associated with maintaining checkpoints and administering the customs system); *United States v. Valley Steel Products, Co.,* 729 F.Supp. 1356, 1360 (Ct. Int'l Trade 1990) (liquidated civil penalties for illegal importation of steel not barred by prior criminal sanction; court notes that in absorbing cost of investigation and prosecution, the government suffers diffuse harm from repercussions due to defendant's conduct).

In this case, however, the state never even claimed such an intangible loss in proceedings before the commission or, more significantly, before the trial judge at the hearing on the motion to dismiss. We agree with Cook that the state's effort to justify the penalty as commensurate with its actual loss falls short of what *Halper* requires. In *United States v. Hall,* 730 F.Supp. 646 (M.D.Pa.1990), the district court reached a similar conclusion in addressing the government's attempt to obtain a $1 million civil penalty from a previously-convicted defendant who failed to file a report regarding an international transfer of securities. The court stated:

> [T]he Government puts forth only the most minimal effort at establishing a rational relationship between the $1,035,000 civil penalty and the goal of making the Government whole. Beyond its general assertions concerning the "heavy burden" of investigation and prosecution and the injury to the United States' trade and economic programs, which it characterizes as "impossible to measure, with precise certainty," the Government makes no attempt to quantify the actual losses it suffered as a result of [defendant's] criminal misconduct. The absence of such a quantification, when coupled with the disproportionate relationship between the amount of the fine and the damages apparently caused by [defen-

dant's] conduct, leads the court to conclude that this fine is not rationally related to the goal of making the Government whole. *Id.* at 655.

The state also asserts that the trial court erred in applying *Halper* because that case announced "a rule for the rare case, the case such as the one before us where a fixed-penalty provision subjects a prolific but small gauge offender to a sanction overwhelmingly disproportionate to the damage he has caused." 490 U.S. at 449, 109 S.Ct. at 1902.

The state contends that Cook, in light of the fact he was ordered to pay restitution of more than $390,000 to 150 victims of the securities law violations, was not a "small gauge offender," entitled to protection under *Halper.* This fact, however, adds nothing to the calculation of the state's own loss, which is the relevant consideration for this double jeopardy analysis. *Halper* makes this point clear, stating: "The protections of the Double Jeopardy Clause are not triggered by litigation between private parties." *Id.* at 451, 109 S.Ct. at 1903. Cook has never argued that the restitution order was punishment which would trigger the Double Jeopardy Clause.

The state also argues that the $150,000 penalty imposed is not "overwhelmingly disproportionate" to the state's proven costs of more than $31,000. We find no support for this contention in *Halper.* Although in that case the Supreme Court did indicate that a penalty which exceeded the government's actual costs would not necessarily offend the Double Jeopardy Clause, it did not suggest any particular ratio of costs to penalty that should serve as a threshold for double jeopardy analysis. Rather, to be classified as remedial, the penalty imposed must be "rationally related to the goal of making the Government whole." *Id.* at 451, 109 S.Ct. at 1903. That relationship may be established when the state's loss is close to the civil sanction imposed, even if the sanction exceeds it. *Id.* at 449, 109 S.Ct. at 1902 ("process of affixing a sanction that compensates the Government for all its costs invariably involves an element of rough justice"); *see also State v. Darby,* 246 N.J.Super. 432, 587 A.2d 1309 (Ct.App.Div.1991) (civil sanction of

$292,000 in securities case was rationally related to government's $205,000 in costs, plus office expenses, physical plant costs, travel time, and trial costs). In this case, we agree with the trial court that no such rational relationship was established.

Finally, we agree with Division Two of this court in rejecting the argument that the punishments can be accumulated so long as they remain within statutory limits. *See Mullet,* 168 Ariz. at 598, 816 P.2d at 255 ("While multiple punishments may be imposed in a single proceeding for the same conduct if authorized by statute, the Double Jeopardy Clause clearly prohibits a second proceeding to punish for the same conduct"). In this context, the state's reliance on *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989), which considered punishment for multiple offenses in a *single* proceeding, is misplaced.

The order of the superior court dismissing the indictment with prejudice is affirmed.

EHRLICH, P.J., and CONTRERAS, J., concur.