880 P.2d 735

Frank Rivas HERNANDEZ and William Douglas Dennison, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, The Honorable Frank T. Galati, a judge thereof, Respondent Judge,

The STATE of Arizona, ex rel. Grant WOODS, Attorney General, Real Party in Interest.

No. 1 CA–SA 93–0314.

Court of Appeals of Arizona, Division 1, Department A.

May 19, 1994.

Review Denied Sept. 20, 1994.

Treasure L. VanDreumel and Storrs & Storrs by E. Sharon Storrs, Phoenix, for petitioners.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals

Section, Alan S. Baskin, Asst. Atty. Gen., Phoenix, for real party in interest.

## OPINION

GRANT, Presiding Judge.

Petitioners Frank Rivas Hernandez and William Douglas Dennison ("petitioners") seek special action relief from the trial court's denial of their Motion To Dismiss Indictment With Prejudice on double jeopardy grounds. The issues presented are:

> (1) Did the trial court err in ruling that *United States v. Dixon* [— U.S. ——], 113 S.Ct. 2849 [125 L.Ed.2d 556] (1993), disposes of petitioners' federal double jeopardy claims because the indictment alleges different offenses than the securities violations found by the Corporation Commission?

> (2) Did the trial court err in rejecting petitioners' double jeopardy claims under the Arizona Constitution and under Ariz.Rev. Stat.Ann. section 13-116?

By an order dated January 3, 1994, we accepted jurisdiction because this case presents pure questions of law with statewide importance. *See Smart Indus. Corp. v. Superior Court,* 179 Ariz. 141, 876 P.2d 1176 (App. 1994). We also denied relief with this opinion to follow.

## I. *FACTUAL AND PROCEDURAL HISTORY*

In late 1990, the Securities Division of the Arizona Corporation Commission ("the Commission") began investigating petitioners Hernandez and Dennison and an individual named Warren Yee, who were the three principals of an entity known as CBI International. Upon completion of the investigation, the Securities Division filed a Notice of Opportunity For Hearing with the Commission. The Notice, an administrative complaint, alleged that petitioners and Yee had violated the Arizona Securities Act[1] by being unregistered securities dealers, selling unregistered

securities, and committing fraud in connection with the sale of securities. The Notice requested the Commission, *inter alia,* to impose an administrative penalty of $5000 for each violation and order restitution. The Commission determined that petitioners' investment program violated A.R.S. sections 44-1841 (prohibiting the sale of unregistered securities), 44-1842 (prohibiting transactions by unregistered dealers), and 44-1991 (prohibiting fraud in the sale of securities). The Commission ordered petitioners and Yee to pay $85,000 in restitution to their investors and $10,000 each as an administrative penalty. The Commission would reduce the penalties to $1000 each if petitioners and Yee made the ordered restitution.

The Commission then referred the matter to the Attorney General's Office for criminal prosecution. On November 19, 1992, the state grand jury indicted petitioners and Yee on one count of fraudulent schemes and artifices in violation of A.R.S. section 13-2310, two counts of theft in violation of A.R.S. section 13-1802 and one count of illegally conducting an enterprise in violation of A.R.S. section 13-2312.[2] Petitioners claim that each charged offense arises from the same conduct for which the Commission had previously penalized them.

On April 30, 1993, petitioner Hernandez filed a Motion to Dismiss Indictment With Prejudice.[3] He argued that the double jeopardy clauses of the United States and Arizona Constitutions barred the present prosecution because the Commission had already punished petitioners by imposing the $10,000 administrative penalties. *See United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *State v. Cook,* 870 P.2d 413 (Ariz.App.1993); *Mullet v. Miller,* 168 Ariz. 594, 816 P.2d 251 (App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). In response to the Motion To Dismiss, the state argued that the Commission's penalties did not constitute

---

1. Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 44-1801 to - 2055 (1994).

2. Yee entered a guilty plea shortly after the state grand jury indicted him. He is not a party to this special action.

3. Petitioner Dennison has joined in all relevant pleadings filed by petitioner Hernandez, including this special action.

"punishment" for double jeopardy purposes because those penalties were compensatory as opposed to punitive in nature. The trial court set an evidentiary hearing for September 10, 1993, to determine whether the administrative penalties were rationally related to the Commission's costs of investigating and prosecuting the securities case. *See Halper,* 490 U.S. at 450, 109 S.Ct. at 1902; *Cook,* 870 P.2d at 415–417; *Mullet,* 168 Ariz. at 597, 816 P.2d at 254. If they were not related, the penalties would constitute punishment and the trial court would have been required to dismiss the present criminal proceedings as violative of the double jeopardy clauses. *Mullet,* 168 Ariz. at 597–98, 816 P.2d at 254–55.

Before the *"Halper–Mullet"* evidentiary hearing occurred, however, the United States Supreme Court decided *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Under *Dixon,* multiple prosecutions or punishments based on the same conduct are permissible if each offense requires proof of at least one separate element. *Id.* at ——, 113 S.Ct. at 2856–64.

On August 23, 1993, in *Dixon*'s wake, the state moved to vacate the scheduled *"Halper–Mullet"* hearing. The state argued that regardless of whether the Commission had already punished petitioners, the trial court had to reject their double jeopardy claims because the criminal offenses require proof of entirely different elements than the Securities Act violations did.

Following oral argument, the trial court granted the state's Motion To Vacate the evidentiary hearing and dismissed petitioners' double jeopardy claims. The trial court "specifically [found] that it should not follow *Mullet v. Miller* because *Dixon* renders the *Mullet* holding untenable." This special action followed.

## II. DISCUSSION

### A. The Federal Double Jeopardy Clause

The federal double jeopardy clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The double jeopardy clause applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The protection against double jeopardy prohibits both successive prosecutions and successive punishments "for the same offence." *Dixon,* —— U.S. at ——, 113 S.Ct. at 2855; *Halper,* 490 U.S. at 440, 109 S.Ct. at 1897. A review of the United States Supreme Court's recent decisions analyzing what constitutes "the same offence", and how those decisions have impacted Arizona courts' federal double jeopardy analysis, provides the framework for our disposition of petitioners' claims.

### 1. The Blockburger "Same–Elements" Test

Before 1990, when the Supreme Court decided *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled by Dixon,* —— U.S. ——, 113 S.Ct. 2849, the sole inquiry[4] when a defendant complained of multiple prosecutions or punishments for the same conduct was whether each offense contained an element not contained in the other; if not, they were "the same offence" and the double jeopardy clause barred the successive prosecution and additional punishment. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911) " 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction

---

**4.** ."*Blockburger* furnishes ... the 'established test' for determining whether successive prosecutions arising out of the same events are for the 'same offence.' " *Grady,* 495 U.S. at 528, 110 S.Ct. at 2097 (Scalia, J., dissenting) (quoting *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). *But see Brown v. Ohio,* 432 U.S. 161, 166–67 n. 6, 97 S.Ct. 2221, 2226 n. 6, 53 L.Ed.2d 187 (1977) ("The *Blockburger* test is not the only standard for determining whether

successive prosecutions impermissibly involve the same offense.") (dictum); *Illinois v. Vitale,* 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980) (suggesting that even if two successive prosecutions were not barred by the *Blockburger* test, second prosecution would be barred if prosecution sought to establish an essential element of second crime by proving conduct for which defendant was convicted in first prosecution).

under either statute does not exempt the defendant from prosecution and punishment under the other.'" (quoting *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871)). This test, known as the *Blockburger* test or the "same-elements" test, focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction. *Grady,* 495 U.S. at 528, 110 S.Ct. at 2097 (Scalia, J., dissenting). Thus, under the "same-elements" test, it does not matter that the successive prosecution or punishment is for the same conduct for which the defendant has already been prosecuted or punished; as long as each offense contains an element the other does not (i.e., if it is possible to violate one statute without violating the other), then the two violations do not constitute "the same offence", and the double jeopardy clause does not bar the additional prosecution or punishment. *Id.; see Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 ("[A]lthough both sections were violated by the one sale, two offenses were committed.").

### 2. *Grady, Halper, And The "Same–Conduct" Test*

In *Grady,* the Supreme Court held that in addition to passing the "same-elements" test, a subsequent prosecution must satisfy a "same-conduct" test: that is "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted," the double jeopardy clause bars the subsequent prosecution. 495 U.S. at 510, 110 S.Ct. at 2087.

Shortly before the Supreme Court decided *Grady,* it decided *Halper* in which the Court also described the double jeopardy clause as prohibiting successive punishment based on the same conduct. 490 U.S. at 451, 109 S.Ct. at 1903. Halper was convicted of filing false Medicare claims totaling $585. He was sentenced to two years' imprisonment and fined

$5,000. The government then sued Halper under the civil False Claims Act which provided for a civil penalty totaling $130,000. Based on the facts established by Halper's criminal conviction and incorporated into the civil suit, the district court granted summary judgment to the government on the issue of liability. The district court, however, limited the government's recovery to only $1,170 because the statutorily authorized civil penalty of $130,000, an amount 220 times greater than the government's measurable loss, qualified as punishment which, in view of Halper's previous sentence, was barred by the double jeopardy clause. *Id.* at 439–40, 109 S.Ct. at 1897. The government appealed directly to the Supreme Court. *Id.* at 440, 109 S.Ct. at 1897.

Significantly, the government did not argue that the second punishment was permissible because the civil violation was a different offense than the offense for which Halper had already been punished. To have done so would have been difficult because the criminal charges and the civil suit involved the same elements.[5] Thus, the Court did not face the "same-elements"/"same-conduct" distinction, nor did it undertake a *Blockburger* analysis.

Rather, the issue was "under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." *Halper,* 490 U.S. at 436, 109 S.Ct. at 1895. The Supreme Court held that "the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action *based on the same conduct* and receive a judgment that is not rationally related to the goal of making the Government whole." *Id.* at 451, 109 S.Ct. at 1903 (emphasis added). Since there was no distinction between "the same offense" and "the same conduct" within the context of *Halper,* the Supreme Court used the term "conduct" instead of "offense" in describing this prohibition against double jeopardy.

---

**5.** The criminal charges in *Halper* were brought under 18 U.S.C. section 287, which prohibits "mak[ing] or present[ing] ... any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." The civil charges were brought under 31 U.S.C. section 3729, which is violated when "[a] person not a member of an armed force of the United States ... (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved."

### 3. The Impact Of The "Same–Conduct" Test On Federal Double Jeopardy Claims In Arizona

Relying on *Grady* and *Halper*, Arizona courts altered their federal double jeopardy analysis and assumed that the double jeopardy clause barred not only successive actions for offenses containing the same elements (*Blockburger*), but also successive actions based on the same conduct (*Grady*). *See Taylor v. Sherrill*, 169 Ariz. 335, 340, 819 P.2d 921, 926 (1991) ("*Grady* ... applies ... when *the conduct at issue* has been charged and tried in a prior prosecution.") (emphasis added); *Cook*, 870 P.2d at 416 (" '[T]he Double Jeopardy Clause clearly prohibits a second proceeding to punish for *the same conduct*.' ") (quoting *Mullet*) (emphasis added); *Mullet*, 168 Ariz. at 597–98, 816 P.2d at 254–55 ("In the event that the administrative penalty is determined to be punishment, the underlying criminal proceeding must be dismissed, to the extent that the charges are based on *the same conduct* that was the basis of the proceeding before the Commission.") (emphasis added).

In light of *Grady*'s "same-conduct" analysis, the focus of the Arizona cases cited above shifted to whether a particular noncriminal proceeding involved "punishment" or a "prosecution" for purposes of double jeopardy. *See Taylor*, 169 Ariz. at 342–44, 819 P.2d at 928–30 (holding that civil traffic judgments are not "prosecutions" or "punishments", thus subsequent criminal prosecution based on same conduct is not barred); *Cook*, 870 P.2d at 413 (holding that Corporation Commission's penalty was "punishment" which barred a subsequent prosecution for the same conduct); *Mullet*, 168 Ariz. at 596–97, 816 P.2d at 253–54 (holding that Corporation Commission proceedings are not "prosecutions"; articulating the standard for when administrative penalties constitute "punishment", thus barring subsequent prosecutions for the same conduct). Under Arizona's post-*Grady* analysis, if a defendant could show that he had already been prosecuted or punished, then a subsequent prosecution or punishment based on the same conduct was automatically barred. Thus, petitioners in the present case sought a *Halper–Mullet* evidentiary hearing to establish that the Commission's administrative penalties constituted "punishment."

### 4. Dixon's Rejection Of The "Same–Conduct" Test

The question before the Supreme Court in *Dixon* was "[w]hether the Double Jeopardy Clause bars prosecution of a defendant on substantive criminal charges based upon the same conduct for which he previously has been held in criminal contempt of court." ——— U.S. at ———, 113 S.Ct. at 2854. In other words, *Dixon* addressed the issue of whether double jeopardy barred a subsequent prosecution based on the same conduct for which a defendant had previously been both prosecuted and punished.

One of the respondents in *Dixon*, Michael Foster[6], was found guilty of four counts of criminal contempt for violating a civil protective order ("CPO") when he assaulted his estranged wife and her mother. *Id.* He was sentenced to 600 days of imprisonment. *Id.* The government then indicted Foster for simple assault (Count I), threatening injury to another (Counts II–IV), and assault with intent to kill (Count V). The first and last counts were based on the conduct for which Foster had already been held in contempt, and the other three counts were based on events for which Foster had been acquitted of contempt. *Id.* Foster filed a motion to dismiss the indictment claiming that the double jeopardy clause barred all the counts. The trial court denied his motion, and Foster appealed. The District of Columbia Court of Appeals, relying on *Grady*, held that the double jeopardy clause barred Foster's subsequent prosecution. *Id.*

The Supreme Court, with Justice Scalia writing for the 5–4 majority, overruled *Grady* and re-established *Blockburger*'s "same-elements" test as the exclusive inquiry for successive prosecution and successive punishment analysis. *Id.* at 2860. *Grady*'s "same-

6. *Dixon* was a consolidated case involving two unrelated defendants, Alvin Dixon and Michael Foster. *Id.* at ———, 113 S.Ct. at 2853–54. Our factual discussion will focus on Foster's subsequent prosecution.

conduct" test, the Court concluded, "lacks constitutional roots ... [and] is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Id.*

The Supreme Court reversed the appellate court and held that the double jeopardy clause barred only the simple assault charge against Foster.[7]

### 5. The Significance Of Dixon And Halper

■ *Dixon*'s lessons are as follows. The federal double jeopardy clause does not bar multiple prosecutions or multiple punishments for the same conduct as long as each charged offense requires proof of at least one element not required for the other offenses. The fact that petitioners could be subject to more than one punishment for the same conduct does not raise the double jeopardy bar to the present prosecution. *See id.* at ——, 113 S.Ct. at 2860. Rather, petitioners' rights against double jeopardy would only be violated if they were subject to multiple prosecutions or punishments for offenses having the same elements. *See id.* at ——, 113 S.Ct. at 2856.

Petitioners construe *Dixon* solely as a "successive prosecution" case which does not apply to their "successive punishment" claim. This argument ignores the fact that in *Dixon*, the double jeopardy clause did not bar four counts of Foster's indictment even though Foster had already been both prosecuted and punished for the conduct. Thus, *Dixon* is as much a successive punishment case as it is a successive prosecution case.

The *Blockburger* "same-elements" test governs both types of cases. *Id.* at ——, 113 S.Ct. at 2856. The "same-elements" test clearly controls petitioners' federal double jeopardy claim.

Likewise, petitioners' argument that *Halper* supports their claim ignores the key facts of that case and how its holding applies in light of *Dixon.* A critical difference between *Halper* and the present case is that in *Halper,* the criminal and civil charges constituted "the same offence" because they required proof of the same elements. Consequently, the Court did not undertake a *Blockburger* "same-elements" inquiry, and instead only analyzed whether the civil penalty constituted a second punishment for what was indisputedly "the same offence." In the present case, however, none of the criminal charges constitutes "the same offence" as petitioners' securities violations if the criminal charges require proof of different elements. So before we apply *Halper*'s standard to determine whether the Commission's administrative penalties constituted "punishment", we must first determine whether the indictment charges petitioners with any of the same offenses that the Commission adjudicated.

### 6. Application Of The "Same-Elements" Test

■ The "same-elements" test does not prevent the present prosecution. The Securities Act violations involved an element which is not at issue in the present prosecution: the sale of securities. *See* A.R.S. §§ 44–1841; 44–1842; 44–1991. The indict-

7. Only Justice Kennedy joined with Justice Scalia in the portion of the opinion which held that Foster could not be prosecuted for simple assault but that he could be prosecuted on the remaining counts. Justice Scalia's analysis compared the elements of the offenses underlying the contempt charges to the elements of the criminal offenses charged in the indictment. Chief Justice Rehnquist wrote an opinion concurring in part and dissenting in part in which Justices O'Connor and Thomas joined concluding that none of the charges against Foster were barred under *Blockburger* because contempt charges are different than criminal charges for the underlying offense. *Id.* at ——, 113 S.Ct. at 2865. Justice Blackmun also wrote an opinion concurring in part and dissenting in part in which he concluded that none of counts against Foster were barred be-

cause contempt charges and substantive criminal charges do not constitute "the same offence" for double jeopardy purposes. *Id.* at ——, 113 S.Ct. at 2881. Justice Blackmun simply said that contempt does not invoke the double jeopardy clause. Justice White, joined by Justices Stevens and Souter, and Justice Souter, joined by Justice Stevens, both wrote opinions concurring that double jeopardy barred Foster's prosecution for simple assault, but dissenting on the grounds that the other four counts were barred as well. *Id.* at ——, 113 S.Ct. at 2869 (White, J., concurring in part and dissenting in part), and at ——, 113 S.Ct. at 2891 (Souter, J., concurring in part and dissenting in part). These three justices would simply keep the *Grady* type of analysis to varying degrees.

ment does not allege any Securities Act violations.

Likewise, the criminal offenses involve elements not present in the Securities Act violations. The theft charges require the state to prove that petitioners, knowingly and without lawful authority, either: (a) controlled the property of another with the intent to deprive that person of the property; (b) converted for an unauthorized use or term another person's property which was entrusted to petitioners; or (c) obtained the property of another by means of a material misrepresentation with the intent to deprive that person of the property. A.R.S. § 13–1802. None of these elements is found in the securities statutes which petitioners violated.

The Securities Act contains three ways in which the Securities Division may prove that a person committed fraud in the purchase or sale of securities:

A.R.S. § 44–1991 (1994). A securities fraud may be proven by *any one* of these three acts.

The fraudulent schemes and artifices criminal count contains elements that the Securities Division did not have to prove before the Commission. First, for a violation of A.R.S. section 13–2310, the state must prove that petitioners acted pursuant to a scheme or artifice to defraud. Although this is one of the ways in which a securities fraud may be proven (*see* A.R.S. section 44–1991(1)), it is not the only way. In fact the securities fraud complaint did not allege that petitioners acted pursuant to a scheme or artifice, and the Commission did not find that petitioners did so. Second, to prove a violation of A.R.S. section 13–2310, the state must establish that petitioners knowingly obtained a benefit as a result of the fraudulent scheme. By contrast, the Securities Act in-

quires only whether the conduct was in connection with an offer to sell or buy securities or the sale or purchase of securities. A.R.S. § 44–1991. Therefore the elements in the securities statute which petitioners violated are not identical to the elements in the fraudulent schemes and artifices criminal count.

Finally, the illegal enterprise criminal count alleges that petitioners knowingly operated an enterprise through the underlying racketeering activities of theft and fraudulent schemes and artifices. *See* A.R.S. § 13–2312. The Commission did not adjudicate whether petitioners acted as an enterprise. Further, as stated above, the Commission proceedings did not involve allegations of theft and fraudulent schemes and artifices.

The federal double jeopardy clause, as interpreted by *Blockburger* and *Dixon,* does not bar the present prosecution of petitioners. Even though based on the same conduct that was at issue before the Commission, the criminal offenses involve entirely different elements than the Securities Act violations.

### 7.   Retroactive Application Of Dixon

■   Petitioners argue that we should apply *Dixon* "prospectively only to indictments issued after the date of [this] opinion." This argument is without support, however, because "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987); *State v. Gardfrey,* 161 Ariz. 31, 33 n. 1, 775 P.2d 1095, 1097 n. 1 (1989). Because *Dixon*'s rejection of *Grady*'s "same-conduct" test involves a new interpretation of the federal double jeopardy clause, the trial court properly applied *Dixon* in this case and vacated the *Halper–Mullet* evidentiary hearing.

### B.   Petitioners' State Double Jeopardy Claims

#### 1.   The Arizona Constitution's Double Jeopardy Clause

■   The Arizona Constitution's double jeopardy clause provides that "No person

shall be ... twice put in jeopardy for the same offense." Ariz. Const. art. 2, § 10. Arizona's courts ordinarily interpret this clause "in conformity to the interpretation given by the United States Supreme Court to the same clause in the federal constitution.... [D]ecisions of the United States Supreme Court have great weight in interpreting those provisions of the state constitution which correspond to the federal provisions." *Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984) (citation omitted). However, we do not follow federal precedent blindly. *State v. Rodarte*, 173 Ariz. 331, 336, 842 P.2d 1344, 1349 (App.1992) (holding that Arizona Constitution's impartial jury clause offers no greater protection than United States Constitution's impartial jury clause); *State v. Hanna*, 173 Ariz. 30, 32, 839 P.2d 450, 452 (App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1615, 123 L.Ed.2d 175 (1993).

Petitioners argue that Arizona's double jeopardy clause bars successive prosecutions or punishments for conduct that has already been prosecuted or punished, even when the subsequent prosecution or punishment is brought for an offense containing at least one separate element than the previously prosecuted or punished violation. The trial court's final order was silent as to petitioners' state constitutional claim. The state and federal double jeopardy clauses are comprised of virtually identical language. We ordinarily interpret Article 2 section 10 of the Arizona Constitution in conformity to the interpretation given by the United States Supreme Court to the same clause in the federal constitution. *Pool,* 139 Ariz. at 108, 677 P.2d at 271. We find no reason in this case to deviate from that policy of uniformity of interpretation.

### 2. Double Punishment Under A.R.S. § 13–116

■ Petitioners' final argument is that Arizona's double punishment statute bars a second proceeding for the same "act or omission" that has already been punished in an earlier proceeding. The test for "same act" under section 13–116 is not the same as the test for "same offense" under the double

jeopardy clause. Section 13–116 requires a modified same elements test as specified by *State v. Tinghitella,* 108 Ariz. 1, 491 P.2d 834 (1971). *See State v. Gordon,* 161 Ariz. 308, 778 P.2d 1204 (1989); *State v. Viramontes,* 163 Ariz. 334, 788 P.2d 67 (1990). A.R.S. section 13–116 provides:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

Initially, the second sentence only applies to the extent the double jeopardy clauses of the Arizona and United States Constitutions do. Since our earlier analysis provides no violation of the double jeopardy clauses, this sentence likewise provides no protection. Beyond that, the second sentence of this statute does not apply to the present prosecution.

Furthermore by its plain language, the second sentence of this statute only bars a prosecution for the same act or omission when the defendant has been acquitted or convicted and sentenced in a previous prosecution. The Commission did not acquit, convict, or sentence petitioners; it merely subjected them to its administrative order. Moreover, the proceeding before the Commission was not a prosecution. *Mullet,* 168 Ariz. at 596, 816 P.2d at 253. "[A] prosecution for double jeopardy purposes is a judicial proceeding initiated on behalf of the state by officers charged with the enforcement of the state's penal laws, seeking the conviction and punishment of persons alleged to have committed a criminal offense." *State v. Nichols,* 169 Ariz. 409, 411, 819 P.2d 995, 997 (App.1991). The Commission's proceeding was an administrative action brought by officers who are responsible for the civil enforcement of the state's securities laws; the Attorney General, not the Securities Division of the Corporation Commission, is charged with enforcing Arizona's criminal laws relating to securities violations. *See* A.R.S. § 44–

2032(5) (authorizing Commission to transmit information about securities violations to Attorney General for criminal prosecution).

### III. *CONCLUSION*

The trial court properly vacated petitioners' scheduled *Halper–Mullet* evidentiary hearing and dismissed their double jeopardy claims. The mere fact that petitioners could be subject to more than one sanction for the same conduct does not raise the double jeopardy bar to the present prosecution. The federal and state constitutions do not bar multiple prosecutions or multiple punishments for the same conduct as long as each charged offense requires proof of at least one element not required for the other offenses. Even though the criminal offenses are based on the same conduct as the Securities Act violations, the criminal offenses require proof of entirely different elements. Petitioners' request for relief is therefore denied.

EHRLICH and VOSS, JJ., concur.