The STATE of Ohio, Appellant and Cross–Appellee,

v.

CRAWLEY, Appellee and Cross–Appellant *.

[Cite as State v. Crawley (1994), 96 Ohio App.3d 149.]

Court of Appeals of Ohio,
Warren County.

No. CA93–09–072.

Decided July 18, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1420, 642 N.E.2d 386.

*Timothy A. Oliver*, Warren County Prosecuting Attorney, and *Robert D. Karl*, Assistant Prosecuting Attorney, for appellant and cross-appellee.

*Thomas G. Eagle Co., L.P.A.*, and *Thomas G. Eagle*, Franklin, for appellee and cross-appellant.

---

*Per Curiam.*

Plaintiff-appellant and cross-appellee, the state of Ohio, appeals a decision of the Warren County Court of Common Pleas dismissing the indictment against defendant-appellee and cross-appellant, Michael J. Crawley, on double jeopardy grounds.

On October 16, 1992, appellee went left of center and collided head-on with another vehicle, severely injuring its occupants. Appellee was cited for operating

a motor vehicle without reasonable control in violation of R.C. 4511.202. He entered a plea of no contest to this charge in the Warren County Court and was found guilty.

Appellee was subsequently indicted for aggravated vehicular assault in violation of R.C. 2903.08(A) with a specification of physical harm pursuant to R.C. 2941.143. Appellee filed a motion to dismiss the indictment, claiming that it was barred by the Fifth Amendment, since he had already been placed in jeopardy, and that the physical harm specification was void for vagueness. The trial court originally overruled the motion. It also overruled appellee's motion to suppress a blood test and statements appellee made to the police.

Subsequently, appellee filed a motion for reconsideration of his motion to dismiss. After considering that motion, the trial court granted appellee's motion to dismiss on double jeopardy grounds, finding that the same conduct supported both the charge of failure to control and the element of recklessness in aggravated vehicular assault. The state filed a timely appeal from the trial court's decision granting the motion to dismiss, and appellee filed a cross-appeal from the decisions overruling his motions to suppress.

In its sole assignment of error, the state contends that the trial court erred in dismissing the indictment. It argues that the trial court relied upon the "same conduct" test set forth in *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, which has been abandoned by the United States Supreme Court. We find this assignment of error to be well taken.

In *Grady*, the United States Supreme Court stated that a court must first apply the traditional comparison of the elements test set forth in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, in determining whether a subsequent prosecution is barred by the Double Jeopardy Clause. In *Blockburger*, the court had stated that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

However, the court in *Grady* went on to find that the *Blockburger* test is not the only standard for determining whether successive prosecutions violate the Double Jeopardy Clause. *Id.*, 495 U.S. at 519–520, 110 S.Ct. at 2092, 109 L.Ed.2d at 563. It stated:

" * * * the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an 'actual evidence' or 'same

evidence' test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. * * * " (Footnotes omitted.) *Id.* at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564.

The United States Supreme Court subsequently overruled *Grady* in *United States v. Dixon* (1993), 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556, and returned to using the *Blockburger* test only. It found that the "same conduct" test applied in *Grady* "is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Id.* at ——, 113 S.Ct. at 2860, 125· L.Ed.2d at 573.

The trial court relied upon the "same conduct" test set forth in *Grady* in dismissing the indictment. The state argues that *Dixon* applies, and therefore the court should not have applied the "same conduct" test. Appellee argues that *Dixon* was not decided until almost a year after the accident and cannot be applied retroactively.

Since there is no Ohio law on this issue, we have examined law from other jurisdictions and found only four cases that directly address the issue whether *Dixon* may be applied retroactively. They uniformly conclude that it can. They are *United States v. Cruce* (C.A.5, 1994), 21 F.3d 70; *State v. Kurzawa* (1994), 180 Wis.2d 502, 509 N.W.2d 712, certiorari denied (1994), 512 U.S. ——, 114 S.Ct. 2712, 129 L.Ed.2d 839; *People v. Miller* (1994), 255 Ill.App.3d 577, 193 Ill.Dec. 449, 626 N.E.2d 759; *Hernandez v. Superior Court of Arizona* (1994), App., 179 Ariz. 515, 880 P.2d 735.

All four of these cases rely upon *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649, in which the United States Supreme Court held that *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (prohibiting the use of peremptory challenges based on race), could be applied retroactively. It stated: "We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith, supra,* at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661–662. The court reasoned that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication * * *," and that "selective application of new rules violates the principle of treating similarly situated defendants the same." *Id.* at 322–323, 107 S.Ct. at 713, 93 L.Ed.2d at 658.

In *Griffith,* the case applied retroactively expanded the rights of the defendant. However, courts have relied upon *Griffith* to retroactively apply cases that restrict the rights of the defendant, finding that the same goals of doing justice in each case and treating similarly situated defendants similarly were served. See *United States v. Santamaria–Hernandez* (C.A.9, 1992), 968 F.2d 980; *United*

*States v. Sanchez* (C.A.9, 1991), 944 F.2d 497; *Miller, supra,* citing *State v. Smith* (1983), 95 Ill.2d 412, 69 Ill.Dec. 374, 447 N.E.2d 809.

Nevertheless, as pointed out by the Wisconsin Supreme Court in *Kurzawa,* simply applying *Griffith* does not end the inquiry. In that case, the state relied upon *Griffith* in arguing that *Dixon* could be applied retroactively, since the case was in the "direct appeal pipeline" when *Dixon* was decided. The Wisconsin court concluded that *Griffith* was not dispositive, since retroactive application of new law raises "ex post facto concerns." *Kurzawa, supra,* 509 N.W.2d at 716.

While the Ex Post Facto Clause itself does not apply to actions of the judicial branch, judicial decisions applied retroactively can violate the Due Process Clause. *Marks v. United States* (1977), 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260; *Bouie v. Columbia* (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894. "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law * * *." *Bouie, supra,* at 353, 84 S.Ct. at 1702, 12 L.Ed.2d at 899.

The United States Supreme Court's latest pronouncement on the Ex Post Facto Clause is *Collins v. Youngblood* (1990), 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30. In that case, the court quoted the definition of an "*ex post facto* law" stated in *Beazell v. Ohio* (1925), 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216, which includes any law that "deprives one charged with crime of any defense available according to law at the time when the act was committed * * *." *Collins, supra,* 497 U.S. at 42, 110 S.Ct. at 2719, 111 L.Ed.2d at 39. It then stated that "[t]he *Beazell* formulation is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Id.*

In *Collins,* the court overruled two of its previous cases. One of those cases, *Kring v. Missouri* (1883), 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506, involved a Missouri law that abrogated a previous law which said that a defendant's guilty plea to second-degree murder, if accepted by the prosecutor and the court, served as an acquittal of the charge of first-degree murder. In *Kring,* the court found this to be an ex post facto law using a definition which included any law " 'which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage.' " (Emphasis omitted.) *Kring, supra,* at 228–229, 2 S.Ct. at 449, 27 L.Ed. at 509. In overruling *Kring,* the *Collins* court stated:

"It is possible to reconcile *Kring* with the numerous cases which have held that 'procedural' changes do not result in *ex post facto* violations by saying that the change in Missouri law did take away a 'defense' available to the defendant under the old procedure. But this use of the word 'defense' carries a meaning quite different from that which appears in the quoted language from *Beazell,* where the

term was linked to the prohibition on alterations in 'the legal definition of the offense' or 'the nature or amount of the punishment imposed for its commission.' * * * The 'defense' available to *Kring* under earlier Missouri law was not one related to the definition of the crime, but was based on the law regulating the effect of guilty pleas. Missouri had not changed any of the elements of the crime of murder, or the matters which might be pleaded as an excuse or justification for the conduct underlying such a charge; it had changed its law respecting the effect of a guilty plea to a lesser included offense. The holding in *Kring* can only be justified if the *Ex Post Facto* Clause is thought to include * * * any change which 'alters the situation of a party to his disadvantage.' We think such a reading of the Clause departs from the meaning of the Clause as it was understood at the time of the adoption of the Constitution, and is not supported by later cases. We accordingly overrule *Kring*." *Collins, supra,* 497 U.S. at 50, 110 S.Ct. at 2723, 111 L.Ed.2d at 44.

The court also overruled *Thompson v. Utah* (1898), 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061, to the extent it rested on the Ex Post Facto Clause and not the Sixth Amendment. In *Thompson,* the court had held that a law reducing the size of juries in criminal cases from twelve persons to eight deprived the defendant of a substantial right and materially altered the situation to his disadvantage and was therefore an ex post facto law. The *Collins* court stated that "[t]he right to jury trial provided by the Sixth Amendment is obviously a 'substantial' one, but it is not a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Id.* 497 U.S. at 51, 110 S.Ct. at 2724, 111 L.Ed.2d at 45.

We have examined cases interpreting *Collins*. In *United States v. Brechtel* (C.A.5, 1993), 997 F.2d 1108, 1113, certiorari denied (1993), 510 U.S. ——, 114 S.Ct. 605, 126 L.Ed.2d 570 the court referred to the *Beazell* definition of an "ex post facto law" and stated that "[o]nly statutes withdrawing defenses related to the definition of the crime, or to the matters which a defendant might plead as justification or excuse fall within the latter group." The court in *United States v. Knipp* (C.A.6, 1992), 963 F.2d 839, used a similar analysis. In that case, the defendants argued that Congress's decision to extend the statute of limitations for their crime from five to ten years violated the Ex Post Facto Clause, since the prosecution would have been barred under the five-year statute. The court stated that "[p]leading an expired limitations period is certainly a defense in the general sense that it is a defensive measure. More particularly, however, it is a matter in bar of prosecution and as such is distinguishable from a 'pure' defense, which defeats one or more elements of the crime." *Id.* at 843. The court then quoted the language in *Collins* overruling *Kring* and stated:

"Thus, 'defense' as used in *Beazell* means a defense related to the definition or elements of the crime. It does not have the much broader meaning assigned to it by defendants, because a plea in bar is not related to the definition of a crime and is not pleaded as a nullification of one or more of its elements or as an excuse or justification for its commission." *Id.*

In *State v. Luff* (1993), 85 Ohio App.3d 785, 792–793, 621 N.E.2d 493, certiorari denied (1994), 510 U.S. ——, 114 S.Ct. 1116, 127 L.Ed.2d 426, the only Ohio case citing *Collins*, the Court of Appeals for Lucas County found that retroactive application of a statutory change in the definition of "insanity" violated the Ex Post Facto Clause. Although it cited the *Beazell* language from *Collins*, it did not examine the Supreme Court's definition of the word "defense." Nevertheless, the court's conclusion is consistent with the federal courts' interpretation of *Collins*. The insanity defense is an excuse or justification for the commission of the offense, not merely a "matter in bar of prosecution," and is therefore a "defense" as that term is defined in *Collins*.

Applying *Collins* to the present case, we conclude that appellee's claim of double jeopardy is not a "defense" as that term is defined in *Collins*. Therefore, applying *Dixon* retroactively would not act like an ex post facto law and would not violate appellee's right to due process. Accordingly, pursuant to *Griffith* and *Collins*, we hold that *Dixon* may be applied retroactively even though the offense occurred prior to the time it was decided.

■ Despite appellee's numerous arguments to the contrary, we find that applying the *Blockburger* "comparison of the elements" test as mandated by *Dixon* is dispositive of the appeal. Failure to control and aggravated vehicular assault each require proof of an element that the other does not and therefore prosecutions for both offenses do not violate the Double Jeopardy Clause. Accordingly, we find that the trial court erred in dismissing the indictment. We sustain the state's assignment of error, and we remand the case for further proceedings.

■ In appellee's cross-appeal, he raises two assignments of error. In his first assignment of error, appellee states that the trial court erred in failing to dismiss the physical harm specification. In appellee's second assignment of error, he states that the trial court erred in overruling his motion to suppress. However, neither the denial of a motion to dismiss the indictment based upon an allegedly improper specification nor the denial of a motion to suppress is a final appealable order. *State v. Hawkins* (1986), 30 Ohio App.3d 259, 30 OBR 419, 507 N.E.2d 425; *State v. Wetzel* (1963), 118 Ohio App. 368, 25 O.O.2d 261, 194 N.E.2d 911; *Cleveland v. Iacampo* (Dec. 27, 1990), Cuyahoga App. No. 57796, unreported, 1990 WL 212117. See, also, *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d

1353, certiorari denied (1991), 499 U.S. 941, 111 S.Ct. 1399, 113 L.Ed.2d 454. Appellee cannot "bootstrap" his appeal of orders that are not final onto the state's appeal. Since any number of events could occur once this case is remanded to the trial court, we conclude that to address appellee's assignments of error would be to render an advisory opinion. Therefore, we dismiss the cross-appeal.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part, reversed in part, and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment accordingly.*

WALSH, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.