Michael J. KURZAWA, Petitioner–
Appellant,

v.

Eurial K. JORDAN, Administrator, Division of Probation and Parole, and James E. Doyle, Attorney General, State of Wisconsin, Respondents–Appellees.

No. 96–3299.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1997.

Decided May 29, 1998.

Stephen M. Glynn, Robert R. Henak (argued), Shellow, Shellow & Glynn, Milwaukee, WI, for Petitioner–Appellant.

Sharon Ruhly (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Respondent–Appellee.

Before CUMMINGS, COFFEY and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

The petitioner-appellant, Michael Kurzawa, appeals from the district court's denial of his petition for writ of habeas corpus. He contends that the court erred in concluding that the "same elements" double jeopardy test set

forth in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), applies retroactively to allow his Wisconsin prosecution for uttering a forged document, Wis. Stat. § 943.38(2), following acquittal on charges of theft by fraud, Wis. Stat. § 943.20(1)(d). We affirm.

## I. BACKGROUND

To best understand the nature of this appeal, we shall intermingle the facts underlying it with Supreme Court case law. In 1977, Dr. Robert Beckes, who is a surgeon, and his wife, Dr. Clarice Beckes, a dentist, established separate professional practices in Milwaukee, Wisconsin. In that same year, the Beckeses retained the petitioner-appellant, Michael Kurzawa, to provide accounting and financial management services in connection with their respective practices. Because Kurzawa's position made him responsible for, among other things, paying bills and bookkeeping, he had access to the Beckes' business checking accounts with the Greater Milwaukee Bank, also located in Milwaukee.

Sometime in 1986, Robert Beckes grew concerned over the financial condition of his medical practice, and had an independent audit conducted to ascertain whether there existed a problem, and if so, the source of it. Upon completion of the audit, it was discovered that, from the early 1980's through March of 1986, Kurzawa wrote over one-hundred checks, totaling almost $100,000, to himself and his business on Robert and Clarice Beckes' professional accounts, forging their names as the drawers of the drafts. Following an investigation by the forgery unit of the Milwaukee Police Department, the Milwaukee County district attorney filed a criminal information against Kurzawa on August 2, 1989, charging him with one count of embezzlement, in violation of Wis. Stats. §§ 943.20(1)(b) and (3)(c). The information was amended in February, 1990, so as to charge the petitioner with two counts of em-

bezzlement and eight counts of forgery, Wis. Stat. § 943.38(1)(a), and was amended a second time on September 18, 1990, charging him with two counts of theft by fraud, where the value of property misappropriated exceeds $2,500, contrary to Wis. Stats. §§ 943.20(1)(d) and (3)(c). In the interim, on May 29, 1990, the United States Supreme Court issued its opinion in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a decision representing a marked change of course in double jeopardy jurisprudence. Prior to that date, constitutional challenges under the Double Jeopardy Clause were analyzed under what was known as the "*Blockburger* same elements test," named so after the seminal case, *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), wherein the Court held:

> The applicable [double jeopardy] rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182 (citing *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911)).[1] *Grady* effectively provided criminal defendants with a second layer of double jeopardy of protection, that is, "even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element on the second crime by proving the conduct for which the defendant was convicted in the first prosecution." *Grady*, 495 U.S. at 510, 110 S.Ct. at 2087.

On September 24, 1990, the Milwaukee County case against Kurzawa went to trial before a jury on the second amended information charging two counts of theft by fraud.[2] In its case-in-chief, the prosecution

---

**1.** The "same elements" double jeopardy test actually did not begin with *Blockburger*—its roots can be traced back as far as *Ex Parte Nielsen*, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889) ("[W]here ... a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without twice

being put in jeopardy for the same offense."). *See Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977).

**2.** The parties stipulated that only the charges in the second amended information, that is, the two theft by fraud counts, went to trial in the Milwau-

sought to establish the "false representation" element of the crime with evidence that Kurzawa had misappropriated funds from the Beckes' accounts by forging their names as the purported makers of the drafts, naming himself or his business as payee, and then cashing the checks. *See State v. Kurzawa*, 173 Wis.2d 769, 496 N.W.2d 695, 696–97 (Wis. App.1993). The matter was never submitted to the jury, however, as the judge granted Kurzawa's motion for a judgment of acquittal after ruling that the State failed to prove Kurzawa had made a false representation to an agent of the Beckeses, as required by the theft by fraud statute, Wis. Stat. § 943.20(1)(d).[3]

Then, on October 4, 1991, Kurzawa was charged by criminal information in Walworth County (Wisconsin) with 54 counts of uttering a forged instrument, in violation of Wis. Stat. § 943.38(2). Each count arose from separate checks Kurzawa had written on the Beckes' accounts and thereafter deposited in his own account at the Walworth State Bank in Walworth, Wisconsin, between April 16, 1985 and March 24, 1986. These fifty-four checks were among the more than one-hundred checks which provided the basis for the previous Milwaukee County theft by fraud prosecution. On October 18, 1991, Kurzawa filed a motion with the Walworth County Circuit Court to dismiss the "uttering a forged instrument" charges against him on double jeopardy grounds. Relying on the then-recent *Grady* decision, he argued that "[b]ecause ... [he] previously was acquitted in Milwaukee County Circuit Court for the same criminal conduct alleged in the present information, further prosecution of this case would subject him to double jeopardy...." The trial judge denied this motion due to the absence of an overlapping or concurrent "necessary element between theft by fraud and uttering [a forged instrument]," and ordered the Walworth County prosecution to proceed. Kurzawa subsequently appealed that determination to the Wisconsin Court of Appeals, which, following an unsuccessful attempt to certify the issue to the Wisconsin Supreme Court, reversed the order of the Walworth County Circuit Court and remanded the case back to that court with instructions to dismiss the criminal complaint. In so doing, it followed *Grady's* "same conduct" double jeopardy test:

> Comparing Kurzawa's conduct in the Milwaukee County theft by fraud prosecution—particularly that concerning the element of false representation-with Kurzawa's conduct which the state alleges in this case, it is clear that the state relies on the same core conduct—Kurzawa's forging the Beckes' checks and naming himself or his business as payee. This is precisely what *Grady* forbids.

*Kurzawa*, 496 N.W.2d at 699.

In April of 1993, the Wisconsin Supreme Court granted the State's appeal from the court of appeals' decision dismissing the uttering a forged document charges against Kurzawa. Before oral argument was held in the case, the United States Supreme Court, in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), overturned *Grady*. "[W]e think it time to acknowledge what is now, three years after *Grady*, compellingly clear: the [*Grady*] case was a mistake," *id.* at 711, 113 S.Ct. at 2864, the High Court explained. "We do not lightly reconsider a precedent," it went on to state, "but, because *Grady* contradicted an 'unbroken line of decisions,' contained 'less than accurate' historical analysis, and has produced 'confusion,' we do so here." *Id.*, 113 S.Ct. at 2864 (citations and footnote omitted). The new double jeopardy standard espoused in *Dixon* was not really new at all, but rather only a reiteration of the old *Blockburger* "same elements" test that had been in effect prior to *Grady*. Thus, double jeopardy analysis returned to inquiring into whether each of the two offenses for which a defendant is tried or punished contains an element not set forth in the other. *Grady's* additional requirement to avoid the double jeopardy

kee County case. (R. 6, Walworth County. Stip., ¶ 3).

**3.** Specifically, the State argued that the Greater Milwaukee Bank was the Beckes' agent. The trial judge ruled that the relationship between depositor and financial institution is one of creditor/ debtor, not principal/agent.

bar—that the conduct used to prove an element of the second offense not constitute an offense for which the defendant has previously been prosecuted—was cast aside.

The Wisconsin Supreme Court ordered supplemental briefing addressing the impact of *Dixon* on the State's appeal. Kurzawa argued that retroactive application of *Dixon* would operate similarly to an impermissible *ex post facto* law, denying him his right to due process. He also contended that *Dixon* should be rejected as a matter of Wisconsin constitutional law. The Wisconsin Supreme Court rejected both of these arguments outright, explaining:

> [W]e believe that at the time Kurzawa engaged in the conduct for which he stands accused, *Blockburger's* "same elements" test was the standard by which his double jeopardy claim would have been analyzed. [Because *Dixon's* double jeopardy test is the same as *Blockburger's*,] ... applying such an analysis does not violate his due process rights.

> \*　　\*　　\*　　\*　　\*　　\*

> *Blockburger* is not a perfect test, but it is better than *Grady's* "same conduct" approach. We hereby follow the United States Supreme Court and adopt the analysis of *Dixon* and *Blockburger* in double jeopardy cases involving successive prosecutions.

*State v. Kurzawa,* 180 Wis.2d 502, 509 N.W.2d 712, 720, 722 (1994). The court then analyzed Kurzawa's double jeopardy claim under the *Blockburger–Dixon* formulation. It concluded that "theft by fraud," Wis. Stat. § 943.20(1)(d), and "uttering a forged writing," Wis. Stat. § 943.38(2), each require proof of an element that the other does not, that the two offenses thus survived the "same elements" test, and that the Walworth County prosecution could proceed. *Id.* at 722. The United States Supreme Court denied Kurzawa's subsequent petition for writ of certiorari. *Kurzawa v. Wisconsin,* 512

U.S. 1222, 114 S.Ct. 2712, 129 L.Ed.2d 839 (1994).

On January 23, 1995, the Circuit Court for Walworth County found Kurzawa guilty on two counts of uttering a forged instrument, and dismissed the remaining fifty-two counts of the criminal complaint. It withheld sentencing Kurzawa to imprisonment and placed him on eight years' probation—four years on each guilty count to run concurrent with one another. Kurzawa did not appeal his conviction. Rather, after allowing the twenty-day period to file a notice of intent to pursue a postconviction appeal to lapse, *see* Wis. Stat. § 809.30(2)(b), he petitioned the federal district court for habeas relief on April 19, 1996. The judge denied that petition, concluding that *"United States v. Dixon* should be applied 'retroactively' to this case and that, under the 'same elements' test set forth in *Blockburger v. United States,* Kurzawa's right to be free from double jeopardy was not violated by his subsequent trial, conviction and sentencing in Walworth County." Mem. & Ord., at 11. Kurzawa appeals.

## II. ISSUES

Kurzawa's appeal presents us with but one issue for review: whether the double jeopardy test set forth in *United States v. Dixon* applies retroactively so as to allow the prosecution of the petitioner in Wisconsin state court on charges of uttering a forged instrument, in violation of Wis. Stat. § 943.38(2). If *Dixon* is to be applied retroactively, Kurzawa concedes that the district court's denial of his petition for writ of habeas corpus was appropriate. If not, thereby meaning that *Grady v. Corbin* governs this case, he contends that habeas relief is warranted.

## III. DISCUSSION

 This appeal comes to us on denial of Kurzawa's petition for a writ of habeas corpus, a determination pursuant to which we review all questions of law, mixed questions of law, and the district court's legal conclusions de novo.[4] *See Milone v. Camp,*

---

**4.** In *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc), we concluded that the Antiterrorism and Effective Death Penalty Act ("AEDPA"), signed into law on April 24, 1996, applied retro-actively to pending habeas cases. Because Kurzawa's habeas petition was pending judgment on April 24, 1996, the briefs filed in this case set forth that our review should be conducted pursu-

22 F.3d 693, 698 (7th Cir.1994); *Matta–Ballesteros v. Henman,* 896 F.2d 255, 258 (7th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990). However, "state court factual findings that are reasonably based on the record are accorded a presumption of correctness." *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217, 218 (7th Cir.1987). We are authorized to grant habeas relief only where there is a violation of federal statutory or constitutional law, not in those instances where an error under state law is present. *See Drake v. Clark,* 14 F.3d 351, 355 (7th Cir.1994) (citations omitted).

### A. Satisfaction of Habeas Statute Requirements

■ The aim of judicial efficiency has always compelled us to disregard issues not raised or upon which the parties before us agree, save for perhaps matters going to jurisdiction of the federal courts. *See Wood v. Mid–Valley Inc.,* 942 F.2d 425, 427 (7th Cir.1991). Yet another limited exception arises where a habeas petitioner fails to comply with the exhaustion requirements of 28 U.S.C. § 2254, resulting in a procedural defect and waiver of all or some of his claims on appeal. *See Henderson v. Thieret,* 859 F.2d 492, 498 (7th Cir.1988) ("[A] district court is permitted . . . to consider a waiver defense belatedly raised by the state, even to raise that defense *sua sponte,* [but] the court is not permitted to override the state's decision implicit or explicit . . . to forego that defense."). If the State does not explicitly or implicitly forego the waiver defense, we may make *sua sponte* inquiry into whether a procedural default is manifest "and decide whether comity and judicial efficiency make it appropriate to consider the merits" of the petitioner's arguments. *Galowski v. Murphy,* 891 F.2d 629, 634–35 n. 11 (7th Cir.1989)

(citations omitted). While neither the State nor Kurzawa (for obvious reasons) suggests that this appeal is somehow procedurally faulted, the district judge raised a red flag in observing that, although the parties did not address the issue, there might very well be a question "of whether Kurzawa has exhausted his state remedies" because "[t]he record contains no showing of postconviction motions or appeal after the judgment of conviction was entered."[5] Mem. & Ord., at 2 n. 1. Because the State has not foregone a waiver defense, either explicitly or implicitly, we are prompted to preliminarily investigate whether Kurzawa has even satisfied the prerequisites of the habeas statute.

#### 1. Exhaustion

■ "Before considering a [§ 2254] petition for habeas corpus on its merits, a district court must make two inquiries—[1] whether the petitioner exhausted all available state remedies and [2] whether the petitioner raised all his claims during the course of the state proceedings. If the answer to either of these inquiries is 'no,' the petition is barred either for a failure to exhaust state remedies or for a procedural default." *Henderson,* 859 F.2d at 496. This rule, as previously mentioned, applies with equal force to the federal appellate courts as it does to the district courts. *See Galowski,* 891 F.2d at 634–35 n. 11.

##### a. Exhaustion of Remedies

■ Turning to the first of the two "exhaustion" inquiries, we begin with the recognition that an application for federal habeas relief may be granted only if the petitioner "has exhausted the remedies available in the courts of the State, or . . . there is either an absence of available State corrective process or the existence of circumstances rendering

ant to the AEDPA, which "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" *Ford v. Ahitow,* 104 F.3d 926, 936 (7th Cir.1997) (citing *Emerson v. Gramley,* 91 F.3d 898, 900 (7th Cir.1996)). While the United States Supreme Court has since reversed our decision in *Lindh, see Lindh v. Murphy,* — U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), meaning that we must review Kurzawa's appeal under the law as it stood prior to

April 24, 1996, rather than under the more deferential AEDPA standard, we think it is unnecessary for the parties to submit supplemental briefs addressing the impact of the Supreme Court's decision on this case.

**5.** The trial judge exercised his discretion and decided not to address the exhaustion of remedies issue.

such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). The rub here is that Kurzawa decided not to appeal his Walworth County conviction to the Wisconsin Court of Appeals. Nevertheless, the Wisconsin Supreme Court had previously ruled that the Double Jeopardy Clause did not preclude his second prosecution in Walworth County, and the United States Supreme Court denied his petition for a writ of certiorari from that judgment. It would therefore have been duplicative—and perhaps futile—for him to appeal his subsequent conviction on double jeopardy grounds. Indeed, it would be senseless for this Court to require or order the identical issue, arguments, and accompanying facts to be litigated once again through the state appellate process. Under these circumstances, we believe that Kurzawa exhausted his state remedies on the unsuccessful double jeopardy arguments he made to the Wisconsin Supreme Court. And because he foreclosed his opportunity to direct appeal from his Walworth County conviction by having failed to file a notice of intent to pursue postconviction relief within twenty days after being placed on probation, Kurzawa may not call upon either the Wisconsin Court of Appeals or the Wisconsin Supreme Court to once again consider his double jeopardy arguments.

### b. *Exhaustion of Claims*

■ Just because Kurzawa exhausted his state remedies does not permit us to immediately proceed to delve into the merits of his arguments. *See Burgin v. Broglin,* 900 F.2d 990, 996 (7th Cir.1990). A second level of analysis is required. We must consider whether Kurzawa raised all the issues on direct appeal that he now asks us to entertain because "[i]f a petitioner fails to raise an issue in state court proceedings, he cannot raise it for the first time in a federal habeas corpus petition." *Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1252 (7th Cir.1988) (citing *Washington v. Lane,* 840 F.2d 443, 445 (7th Cir.1988)). Initially, the state courts must have had a "fair opportunity" to consider a question of constitutional import before federal collateral review on that question is appropriate. *See Burgin,* 900 F.2d at 996 (quoting *Sotelo,* 850 F.2d at 1252). This is

not so much a rule of judicial convenience and efficiency as it is a recognition of the federal-state comity concerns underlying habeas proceedings:

> The junction where federal habeas power intersects with state criminal processes is enswathed in a mutuality of respect between sovereigns. It is that principle of comity which underlies the federal courts' unwillingness to adjudicate too hastily matters of fundamental federal significance arising out of state prosecutions. Requiring that remedies be exhausted in state courts is merely comity's juridical tool, embodying the federal sovereign's respect for the state courts' capability to adjudicate federal rights. Although the federal courts, other conditions being met, will ultimately salve state error of constitutional dimension, the state must first be accorded the opportunity to protect the federally-assured interests of its criminal defendants.

*Verdin v. O'Leary,* 972 F.2d 1467, 1473 (7th Cir.1992) (quoting *Nadworny v. Fair,* 872 F.2d 1093, 1096 (1st Cir.1989)) (citations and footnotes omitted). This Court has adopted a "waiver" analysis that is sensitive to these comity concerns, taking into account the degree to which the petitioner set forth his or her constitutional argument on direct appeal:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of any one of these factors, particularly factors (1) and (2), does not automatically avoid a waiver; the court must consider the specific facts of each case.

*Pierson v. O'Leary,* 959 F.2d 1385, 1393 (7th Cir.1992) (citing *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 454 (7th Cir. 1984)). Without expounding much further

upon the intricacies of this test, the bottom line is that the "task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Verdin,* 972 F.2d at 1476. That having been said, we are not convinced that Kurzawa availed himself of the opportunity to fairly present all of his constitutional arguments to the Wisconsin Supreme Court on direct appeal.

■ Both in his brief to this Court and at oral argument, Kurzawa insists that there exist three independent due process bases for habeas relief from his Walworth County conviction. Initially, he contends that "[r]etroactive application of *Dixon's* new analysis ... would operate exactly like an *ex post facto* law, increasing Kurzawa's risk of punishment and, as such, would deny him due process." (Pet. Br., at 26). Next, Kurzawa likens his Milwaukee County acquittal to a civil statute of repose, asserting that criminal liability cannot be revived by retroactive application of *Dixon* without offending the Due Process Clause. Specifically, he contends:

> The restrictions of due process are not, however, limited to protection against decisions having the effect of *ex post facto* laws. Even in the civil realm, in which the Ex Post Facto Clause does not apply, the government cannot revive liability once extinguished without running afoul of the due process clause. *William Danzer & Co. v. Gulf & S.I.R. Co.,* 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925).... Once Kurzawa was acquitted in Milwaukee County, the then controlling decision in *Grady* acted to extinguish any and all potential liabil-

ity for the 'same conduct' upon which that prosecution was based.

*(Id.* at 26–27). And lastly, he argues that "[d]ue process similarly limits the government power retroactively to deprive even a civil litigant of legal rights once they have vested in a final judgment. *McCullough v. Virginia,* 172 U.S. 102, 123–25, 19 S.Ct. 134, 43 L.Ed. 382 (1898). That principle surely must apply as well when a criminal defendant's rights are vested in a final judgment of acquittal." *(Id.* at 27–28). Clearly, due process is the common thread running through each and every one of these arguments. Kurzawa's argument on direct appeal was similarly grounded in due process, but only the *ex post facto* component thereof.

■ Much of Kurzawa's brief to the Wisconsin Supreme Court reads verbatim with the *ex post facto* analysis he sets forth in his submissions to this Court.[6] He used terms like "repose" and "finality" on direct appeal, albeit sparingly, but certainly cannot be considered to have done so in the context of independent, cognizable arguments.[7] Moreover, the cases he relies upon before us to support his separate "statute of repose" and "finality" arguments, *William Danzer & Co. v. Gulf & S.I.R. Co.,* 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925), *McCullough v. Virginia,* 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898), and *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), are nowhere to be found in his brief filed with the Wisconsin Supreme Court. And tellingly, the Wisconsin Supreme Court's opinion addressed only the *ex post facto* strand of Kurzawa's now multifaceted due process claim. It is unlikely that the Wisconsin Supreme Court would have omitted a discussion of Kurzawa's other two arguments from its thorough, lengthy opinion

---

**6.** On direct appeal to the Wisconsin Supreme Court, Kurzawa also argued that *Dixon* should be rejected as a matter of state constitutional law.

**7.** Kurzawa did raise his other two double jeopardy arguments in a motion for reconsideration of the Wisconsin Supreme Court's decision. However, under Wisconsin law, a litigant may not set forth new legal theories for the first time in a motion for reconsideration. *See O'Neill v. Buchanan,* 186 Wis.2d 229, 234, 519 N.W.2d 750, 752 (Ct.App.1994) ("'[A motion for] reconsidera-

tion assumes that the question has previously been considered."); *Merow v. Shinner, Hucovski & Co.,* 1997 WL 408914, at *7 (Wis.Ct.App., July 23, 1997) ("Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.") (quoting *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987)). Thus, it cannot be said that Kurzawa "fairly presented" his two new due process arguments to the Wisconsin Supreme Court.

if the petitioner had, in fact, advanced them to the court. In sum, we do not believe that Kurzawa asserted his arguments in terms so particular on direct appeal as to bring to the court's attention the specific constitutional rights he now claims were violated by being tried in Walworth County. It is true that the "substance" of the federal claim is all that need be "fairly presented" in state court; a habeas petitioner may reformulate somewhat his arguments on collateral appeal. *See Verdin,* 972 F.2d at 1474 (quoting *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir.1986)). However, the leeway afforded to habeas petitioners in "reformulating" due process arguments is much more limited than in other constitutional contexts. As we explained in *Verdin,* "the principal interpretive hazard inherent in the [waiver analysis] ... is one of specificity. And the problem of specificity is perhaps at its greatest when the court must deal with a procedural due process claim.... [W]ith respect to due process claims, the contours of the possible constitutional claims are, of course, particularly indistinct...." *Id.* at 1475. What Kurzawa is requesting is much more than a mere reformulation of his arguments—he has raised two entirely new, separate due process arguments on collateral appeal. As a result, we will limit our discussion of the merits to whether retroactive application of *Dixon* would be consistent with the *ex post facto* protections embodied in the Due Process Clause.[8]

### B. Merits: Retroactive Application of Dixon

It is quite clear to us that the currently-in-effect *Dixon–Blockburger* "same elements" double jeopardy test would allow the State of Wisconsin's prosecution of Kurzawa in Walworth County for uttering a forged document, Wis. Stat. § 943.38(2), after his acquittal on charges of theft by fraud, Wis. Stat. § 943.20(1)(d). Each crime requires proof of an element that the other does not.[9] Even Kurzawa concedes as much. Whether the now defunct *Grady* analysis would bar the second prosecution is a question we need not reach, for it is our opinion that the *Dixon–Blockburger* test governs this habeas appeal, and that Kurzawa's Walworth County prosecution did not offend the Double Jeopardy Clause of our Constitution.

Some ten years ago, the Supreme Court held "that a new rule for the conduct of criminal prosecutions is to be applied to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). The State contends that Kurzawa is asking us to adopt and an-

8. The district court also apparently believed that Kurzawa had failed to exhaust all his claims but his *ex post facto* claim on direct appeal, since it only addressed that issue in its decision and order denying habeas relief.

9. Theft by fraud, as criminalized by Wis. Stat. § 943.20(1)(d), requires that the State prove six elements beyond a reasonable doubt in order to obtain a conviction:

First, that the defendant made a false representation to (name owner of property).

Second, that the defendant knew that such representation was false.

Third, that the defendant made such representation with intent to deceive and to defraud (name owner of property).

Fourth, that the defendant obtained title to the property of (name owner of property) by such false representation.

Fifth, that (name owner of property) was deceived by such representation.

Sixth, that (name owner of property) was defrauded by such representation.

Wis.Crim. Jury Instruction No. 1453. By contrast, uttering a forged writing, as defined under Wis. Stat. § 943.38(2), requires proof by evidence demonstrating:

First, that the writing was one by which legal rights or obligations are created or transferred.

Second, that the writing was falsely (made) (altered).

Third, that the defendant uttered the writing as genuine.

Fourth, that the defendant knew the writing was falsely (made) (altered).

Wis.Crim. Jury Instruction No. 1492. As the Wisconsin Supreme Court recognized, "theft by fraud" requires proof that the defendant intended to deceive and defraud the owner of the stolen property, as well as that the owner was in fact deceived and defrauded, whereas "uttering a forged instrument" does not. "Uttering a forged instrument," on the other hand, requires proof that the defendant forged a writing "by which legal rights or obligations are created or transferred," while "theft by fraud" does not.

nounce a "new rule"—that due process trumps *Griffith*'s presumption in favor of retroactivity—for which *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), would prohibit retroactive application.[10] In the same breath, the State admits that it failed to raise its *Teague* argument in the district court because "it was not evident on the face of the petition for Writ of Habeas Corpus that the petitioner was seeking a new rule." The case law of this Circuit abounds with authority for the well-established principle that "issues not raised in the district court are deemed waived." *Momient–El v. DeTella,* 118 F.3d 535, 540 (7th Cir.1997) (citing *Garlington v. O'Leary,* 879 F.2d 277, 282 (7th Cir.1989)). Of course, the State is entitled to rely on any argument to support the trial court's denial of Kurzawa's habeas petition. *See, e.g., Schiro v. Farley,* 510 U.S. 222, 228–29, 114 S.Ct. 783, 788–89, 127 L.Ed.2d 47 (1994) (explaining that the Court has the discretion to reach *Teague* issue even though "the State did not raise the *Teague* argument in the lower courts" because "the State, as respondent, is entitled to rely on any legal argument in support of the judgment below"); *but see Collins v. Youngblood,* 497 U.S. 37, 40, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) (citation omitted) ("Although the *Teague* rule is grounded in important federal-state relations, we think it is not 'jurisdictional' in the sense that this Court ... *must* raise and decide the issue *sua sponte*."). We will not exercise our discretion and endeavor to conduct a *Teague* analysis, as it is apparent to us that *Teague* would not affect the outcome of this case—Kurzawa loses. Thus, in furtherance of the cause of judicial efficiency, we shall proceed to address the retroactivity of *Dixon* under *Griffith.*

### 1. *Ex Post Facto Protections and Retroactivity of Dixon*

We now proceed to consider whether there is any merit to Kurzawa's argument

that retroactive application of *Dixon* has the effect of an unconstitutional *ex post facto* law. It is noteworthy that the great weight of authority is stacked against Kurzawa on the issue at hand. In fact, the Supreme Court retroactively applied its "new" double jeopardy rule to the parties before it in *Dixon.* And at least one of our sister circuits, as well as numerous state courts, have since retroactively applied *Dixon's* "same elements" test. *See United States v. Cruce,* 21 F.3d 70 (5th Cir.1994); *State v. Murray,* 644 So.2d 533 (Fl.Ct.App.1994); *Hernandez v. Superior Court,* 179 Ariz. 515, 880 P.2d 735 (App.1994); *State v. Gregory,* 648 So.2d 1220 (Fl.Ct.App. 1995); *People v. Miller,* 255 Ill.App.3d 577, 193 Ill.Dec. 449, 626 N.E.2d 759 (1994); *State v. Crawley,* 96 Ohio App.3d 149, 644 N.E.2d 724 (1994). While the *Dixon* Court was not called upon to consider what, if any, impact due process principles might have had on its decision, both *Miller* and *Crawley* expressly rejected *ex post facto* arguments like the one Kurzawa now asks us to entertain. *See Miller,* 193 Ill.Dec. 449, 626 N.E.2d at 764 ("We conclude, therefore, that the retroactive application of the decision in *Dixon* does not deprive the defendant of equal protection or due process, nor does it subject her to an *ex post facto* law."); *Crawley,* 644 N.E.2d at 728 ("[A]pplying *Dixon* retroactively would not act like an *ex post facto* law and would not violate appellee's right to due process.").

In *Beazell v. Ohio,* 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Supreme Court explained that the Ex Post Facto Clause prohibits the application of "any statute which punishes as crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed...." That these *ex post facto* protections extend to judicial pronouncements is beyond debate,

---

**10.** There exist important distinctions between direct review and collateral review. *See Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). There are likewise significant differences between the principles underlying retroactivity in the two contexts. Whereas *Griffith* favors the retroactive application of new

rules to state and federal cases in the *direct review* pipeline, "new rules generally should not be applied retroactively to cases on *collateral review,*" *Teague,* 489 U.S. at 305, 109 S.Ct. at 1073 (emphasis added), that is, cases which have become final before the new rules are announced.

for the Supreme Court has long recognized that the "right to have fair warning of that conduct which will give rise to criminal penalties ... is protected against judicial action by the *Due Process Clause of the Fifth Amendment*." *Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citations omitted and emphasis added). Thus, while criminal defendants are safeguarded against "[a] 'clear break' in the law that imposes criminal liability for acts not previously punishable," *United States v. Burnom*, 27 F.3d 283, 284 (7th Cir.1994) (citation omitted), it is the Due Process Clause, as opposed to the Ex Post Facto Clause, which is the source of that protection.

Kurzawa's due process attack seems to primarily turn on the second *ex post facto* protection announced in *Beazell*; namely, that a judicial or legislative rule, adopted or enacted after an individual commits a crime, may not be applied to such individual if it would make his punishment more severe than the law would have as it stood at the time he engaged in the criminal conduct. *See Beazell*, 269 U.S. at 169, 46 S.Ct. at 68. Specifically, Kurzawa argues that "[r]etroactive application of *Dixon's* new analysis ... would operate exactly like an *ex post facto* law, increasing Kurzawa's risk of punishment and, as such, would deny him due process." From our point of view, this argument is unpersuasive for several reasons.

First, Kurzawa is seeking the protections of the Ex Post Facto Clause while ignoring its underlying rationale "that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Marks*, 430 U.S. at 191–92, 97 S.Ct. at 993 (citations omitted). *Marks* illustrates this point. In that case, the petitioners were charged with transporting obscene materials in interstate commerce and conspiracy to do the same, in violation of 18 U.S.C. §§ 1465 and 371, respectively. The charges covered conduct that took place through a period ending February 27, 1973. On June 21, 1973, the Supreme Court decided *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419

(1973) which broadened the scope of unprotected obscene material from its earlier definition in *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).[11] The petitioners' case then went to trial in October of 1973, at which time they urged that they were entitled to jury instructions under the old, more narrow, *Memoirs* obscenity definition. The district court rejected this argument, the jury was instructed vis-a-vis the new *Miller* standard, and the petitioners were eventually convicted. The Sixth Circuit affirmed the verdict, and the Supreme Court granted certiorari to determine whether the standards announced in *Miller* could be applied to the petitioners' detriment without running afoul of the Due Process Clause's *ex post facto* protections. The Court answered that question in the negative, taking special note of the fact that *Memoirs*, not *Miller*, was controlling at the time the petitioners engaged in the conduct for which they were indicted:

> We ... hold, in accordance with *Bouie*, that the Due Process Clause precludes the application of the standards announced in *Miller v. California*, to the extent that those standards may impose criminal liability for conduct not punishable under *Memoirs*. *Specifically, since the petitioners were indicted for conduct occurring prior to our decision in Miller, they are entitled to jury instructions requiring the jury to acquit unless it finds that the materials involved are[, consistent with Memoirs,]* "utterly without redeeming social value."

430 U.S. at 196, 97 S.Ct. at 995 (emphasis added). *Marks*, of course, dealt with a judicial decision whose retroactive application had the potential to criminalize conduct that was legal when engaged in, whereas Kurzawa argues that the *ex post facto* protection against making punishment for a crime more burdensome, after its commission, is implicated here. This distinction is of little import. The effect of a change in double jeopardy jurisprudence bears not upon the degree

11. Under *Memoirs*, material was protected under the First Amendment unless it was "utterly without redeeming social value." *Memoirs*, 383 U.S. at 418, 86 S.Ct. at 977. The comparable test in

*Miller* is "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24, 93 S.Ct. at 2615.

of punishment imposed, but rather on whether an individual is subject to prosecution and, in turn, the potential for punishment in the first place. Simply because *Dixon* might allow a second prosecution in an instance that *Grady* would preclude it does not mean that *Dixon* increases the amount of punishment available as a result of the ensuing conviction. *See Collins,* 497 U.S. at 44, 110 S.Ct. at 2720 ("The new statute ... does not alter the definition of the crime of aggravated sexual abuse, of which [the defendant] was convicted, nor does it increase the punishment for which he is eligible as a result of that conviction."). It only means that the *risk* of prosecution (and punishment) is greater.

■ Nevertheless, the appropriate comparison is not, as Kurzawa seems to suggest, between *Dixon* and *Grady,* but rather between *Dixon* and *Blockburger.* After all, *Blockburger,* not *Grady,* was in effect at the time Kurzawa committed his offense, and due process prohibits the application of a decision "which makes more burdensome the punishment for a crime, *after its commission.*" *Beazell,* 269 U.S. at 169, 46 S.Ct. at 69 (emphasis added); *see also Collins,* 497 U.S. at 44, 110 S.Ct. at 2720. "It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law" that was in effect at the time of the commission of the defendant's crime. *Miller v. Florida,* 482 U.S. 423, 431, 107 S.Ct. 2446, 2452, 96 L.Ed.2d 351 (1987) (quoting *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977)) (internal quotations omitted). If there is no "change in punishment from the punishment 'in effect' when the crimes were committed," *id.,* the defendant cannot claim that he or she received insufficient warning of the punishment prescribed for the crime perpetrated. This is precisely where Kurzawa's argument runs into a roadblock. There is no substantive difference—or any difference for that matter—between the *Blockburger* and *Dixon* double jeopardy tests. The latter was just a restatement of the former. Both tests make inquiry into whether the two offenses for which a defendant is tried or punished contains an element not set forth in the other. As such, Kurzawa was afforded no less double jeopardy protection against the Walworth County prosecution, and the risk of punishment therefor, under *Dixon* than he would have enjoyed under *Blockburger,* the law in effect at the time he committed the criminal acts in question.

Kurzawa relies heavily upon the Fifth Circuit's decision in *Rubino v. Lynaugh,* 845 F.2d 1266 (5th Cir.1988), just as he did on direct appeal. The way we see it, however, *Rubino* actually cuts against his due process argument. In that case, the petitioner, Rubino, was successively prosecuted and convicted in a Texas trial court on charges of aggravated kidnaping and attempted murder, arising out of the same criminal conduct. The Texas Court of Criminal Appeals affirmed his conviction based on the fact that, *at a point in time after which Rubino had engaged in his criminal conduct,* it rejected the Texas "carving doctrine," a judicially-developed rule barring multiple prosecutions and convictions "carved" out of a single criminal transaction. Rubino exhausted his state remedies, and thereafter sought a writ of habeas corpus, which was denied. On appeal to the Fifth Circuit, the question was "whether the change in Texas law, applied in a manner that deprived Rubino of the protection of a doctrine *still in effect at the time of his crimes,* constituted a violation of the due process clause of the United States Constitution." *Id.* at 1272 (emphasis added). The court concluded that it did, since a defendant may not be put "in a worse position than he was at the time of his crime." *Id.* at 1273. We repeat, as it is worth repeating, that Kurzawa was placed in no worse position under *Dixon* than he was under the double jeopardy law in effect at the time of his crime, as reflected in *Blockburger.* The result reached in *Rubino* is thus at odds with the facts of this case.

We conclude that there is no due process violation herein that would compel us to deviate from *Griffith's* retroactivity principle "that a new rule for the conduct of criminal prosecutions is to be applied to all cases, state or federal, pending on direct review or not yet final...." *Griffith,* 479 U.S. at 328, 107 S.Ct. at 708. The "same elements" double jeopardy test set forth in *Dixon* did not increase Kurzawa's punishment, or the risk

thereof, relative to the law as it stood at the time he illegally wrote checks to himself and his business on the Beckes' professional banking accounts. Retroactive application of *Dixon* thus satisfies the *ex post facto* concerns of the Due Process Clause.

### 2. *Kurzawa's Unexhausted Due Process Arguments*

As explained above, it is our opinion that Kurzawa has failed to exhaust his state remedies on the "statute of repose" and "finality" arguments he asks that we consider. Even if we assumed, solely for the sake of discussion, that these issues were properly before us, our ultimate conclusion would remain the same.

■■ Kurzawa argues that once he was acquitted in Milwaukee County on charges of theft by fraud, the then-in-effect *Grady* double jeopardy test acted to extinguish any and all future liability for the "same conduct" upon which the prosecution was based, and that due process barred the State of Wisconsin from reviving such liability. He primarily relies on a 1925 civil case out of the Supreme Court, *William Danzer & Co.*, 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126, in which it was held that the lapse of a statute of repose "destroyed the liability of defendant to plaintiff," and that a newly enacted statute could not be applied retroactively to revive liability without "depriv[ing] defendant of its property without due process of law in contravention of the Fifth Amendment." *Id.* at 635, 637, 45 S.Ct. at 613. Apart from our reluctance to adopt *William Danzer*'s civil rule in this criminal context, we think it clear that Kurzawa's contention rests on an overly-broad reading of that case. As the Supreme Court noted in *International Union of Elec. Wkrs. v. Robbins Myers*, 429 U.S. 229, 243, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976), "*Danzer* was given a narrow reading in the ... case of *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 312 n. 8, 65 S.Ct. 1137, 1141, 89 L.Ed. 1628 (1945)." In the latter case, the Court explained that:

> The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life,

liberty or property without due process of law.... Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense of the Fourteenth Amendment.

*Id.* at 315–16, 65 S.Ct. at 1143. To this we add that a civil statute of repose, like the one at issue in *William Danzer*, is fundamentally different from the Double Jeopardy Clause. For example, the former cuts off liability due to the failure to bring suit and runs for a fixed duration, whereas the latter extinguishes liability only when a criminal prosecution is brought and does not "toll" over a period of days, months or years. Because criminal statutes of limitations, which are "the primary source[s] *of repose* and protection from prosecutions based on stale evidence," *United States v. Valona*, 834 F.2d 1334, 1337 (7th Cir.1987) (emphasis added), are more analogous to civil statutes of repose, Kurzawa's *William Danzer* argument might be valid if we were dealing with the retroactive extension of a lapsed criminal statute of limitations. But we are not. As the Supreme Court stated in *Jones v. Thomas*, 491 U.S. 376, 387, 109 S.Ct. 2522, 2529, 105 L.Ed.2d 322 (1989), "neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls." A windfall is exactly what Kurzawa is asking us to give him by way of an unwarranted extension of *William Danzer*. We are not inclined to succumb to his request, and shall abide by the Supreme Court's directive in *Griffith v. Kentucky* that new rules for criminal prosecutions are to be applied in *all* cases, state and federal, pending on direct review.

■■ And lastly, Kurzawa again relies on a century-old civil case, *McCullough v. Virginia*, 172 U.S. at 123–25, 19 S.Ct. 134, in contending that the State of Wisconsin was prohibited from depriving him of certain legal rights that had vested in a final judgment. However, Kurzawa fails to apprise us as to what those "rights" are, and it is not the work of this Court to formulate argu-

ments for the parties. *See Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Bd.,* 957 F.2d 302, 305 (7th Cir.1992) ("[W]e have no obligation to consider an issue that is merely raised on appeal, but not developed in a party's brief."). He further claims that, at the time of his Milwaukee County acquittal, he received an "implied governmental promise" that he would not be subjected to future prosecution for the same conduct. The record reflects that the State made no such promise, express or implied, to Kurzawa when it filed theft by fraud charges against him. Nor did the State make any type of promise, express or implied, to him when he was acquitted. Kurzawa was given the constitutional right—what he seems to convert into a "promise"—to be free from double jeopardy, and that is just what he received. Unfortunately for him, we hold that this right is defined by *Dixon,* not *Grady,* and that he is therefore not entitled to habeas relief.

## IV. CONCLUSION

For these reasons, we affirm the judgment of the district court in denying Kurzawa's petition for habeas relief. Two of the three due process arguments Kurzawa advances to this Court were not "fairly presented" to the Wisconsin Supreme Court on direct appeal, and they are thus not properly before us. And the one remaining argument he did preserve for collateral review—that retroactive application of *Dixon* is tantamount to an unconstitutional *ex post facto* law—is in our view unavailing.

AFFIRMED.